## Case No. 12,017.
### ROGERS v. MECHANICS' INS. CO.

[2 Story, 173;[1] 5 Law Rep. 206.]

Circuit Court, D. Massachusetts. May Term, 1842.

#### AVERAGE—JETTISON OF GOODS—VALUE.

In a case of jettison of goods, their value is generally to be estimated at their prime cost, or original value; or, if the vessel have arrived at her port of destination, at their value at such port.

[2] [This was an action [by Robert Rogers] against the Mechanics' Insurance Company, of New Bedford, on a policy of insurance, dated August 23d, 1838, whereby that company insured $10,000 on the bark America and outfits, from Bristol, Rhode Island, on a whaling voyage, until her return to Bristol. The case first came before this court at the October term, 1841, where a verdict was taken for the plaintiff, subject to be amended by the report of the assessor, as to the amount of damages, and of the contributary interests. See [Case No. 12,016.] The case was accordingly referred to Solomon Lincoln, Esq., who made the following report: "The undersigned having been appointed by an agreement of the parties, to ascertain and report the value of a quantity of blubber thrown overboard from barque America, on a whaling voyage, in a gale of wind, as alleged in the declaration in plaintiff's writ, met the counsel of the parties above named at the office of Thomas D. Elliot, Esq., in New Bedford, on the fifth day of January last past, the plaintiff being represented by Thomas D. Elliot, Esq., and the defendants by Timothy G. Coffin, Esq., and at said time and place, I heard such evidence and arguments as were submitted to me, and afterwards, by agreement of said counsel, I received their written statements and arguments upon the question submitted to me under said appointment. And now, after deliberate consideration of the evidence and arguments in the case, I do upon the matter determine. assess and award the value of the blubber thrown overboard, having regard to the ordinary chances of weather in the climate, to have been the sum of twelve hundred and forty dollars. But, if in the opinion of the court, it was the duty of the assessor to determine the value of the blubber under the extraordinary circumstances at the time of the jettison, taking the chances of the gale, its length, and the probability of the ship surviving it, then in such case I determine, assess and award the value of the blubber at the time of the jettison to have been the sum of nine hundred and eighteen dollars." The questions arising upon the report were submitted to the court without argument.][2]

STORY, Circuit Justice. My opinion is, that the report ought to be accepted, and the larger estimate of the value of the blubber ($1,240) ought to be adopted. Nothing could be more conjectural and uncertain, in the ascertainment of the value of goods, thrown overboard in cases of jettison, than to leave that value to be fixed by the probable or possible chances of the escape from the impending danger. On the other hand, the intrinsic value of the article at the time of the jettison, calculated upon its ordinary price, affords a just and uniform rule, applicable to all cases. But, in fact, this is not a new question; but has been long settled by the course of mercantile usage and practice. In every case of jettison, the uniform rule is, to estimate the value of the goods either at the prime cost, or original value, or, at their value at the port of destination. The latter rule is inapplicable to cases, where the vessel never arrives at her port of destination, or the article is not, at the time of its jettison, in the perfect state in which it is to be carried there. The former rule, of the prime cost or present value, is, therefore, justly applicable to cases like the present, where blubber, and not oil, is sacrificed, and where the value, it never having been at any market, admits of no absolute ascertainment, other than its ordinary average value on board of the ship under common circumstances. No one ever heard of the value of goods in a case of jettison being ascertained by the diminished value, from the immediate danger in which all the property is placed. In England, the rule adopted is that which has been stated; and Lord Tenterden has discussed its foundation and stated its authority. Abb. Shipp. (Ed. 1829) p. 3, c. 8, § 15. In the Roman law, the prime cost or value of the goods thrown overboard was always adopted in cases of jettison; but the value of the contributory goods to the loss was calculated by what they would sell for. Portio autem pro estimatione rerum, quæ salvæ sunt, et earum, quæ amissæ sunt, præstari solet; nec ad rem pertinet, si hae, quæ amissæ sunt, pluris veniri poterunt, quoniam detrimenti non lucri, fit præstatio. Sed in his rebus quarum nomine conferendum est, æstimatio debet haberi; non quanti emptæ sunt, sed quanti venire possunt. Dig. lib. 14, tit. 2, l. 2, §§ 2, 4. And this continues still to be the favored rule in some modern maritime nations; but, in general, they have adopted the same rule as the French law, which ascertains the value of the goods contributing and contributed for, according to their value at the port of discharge. Emerig. Ins. Assur. tom. 1, pp. 635, 655, c. 12, § 42, note 6; Code de Comm. art. 415; Moll. de J. Mar. bk. 2, c. 6, § 4.

---

[1] [Reported by William W. Story, Esq.]

[2] [From 5 Law Rep. 206.]

[2] [From 5 Law Rep. 206.]

But in no country whatsoever, have I been able to find, that any such mode of valuation has prevailed, as that the price is to be the present value under the existing peril at the moment of the jettison. It would be as vague and uncertain, as it would be inconvenient and inadequate to the just purposes of compensation. The sum of $1,240 must, therefore, be allowed as the value of the blubber at the time of the jettison.