Mr. Justice Clayton
delivered the opinion of the court.
This was a bill filed in the superior court of chancery to enjoin a judgment of the circuit court of Hindes county, because founded on a note given for the purchase of slaves brought into this state and sold as merchandise, contrary to law. Such dealing is prohibited by positive law, and the note given in consequence of it is declared void by statute. The sole question is the jurisdiction of a court of equity to give relief after the judgment at law. In determining this, it may be better, in the first place, to recqr to a few plain elementary principles upon the subject, than to become involved in a labyrinth of decided cases. Judge Story, in his treatise on Equity, page 32, says : “The most general, if not the most precise description of a court of equity, in the English and American sense, is that it has jurisdiction in cases of rights recognized and protected by the municipal jurisprudence, where a plain, adequate and complete remedy, cannot be had in the courts of law.” Again, he says, “The sole question applicable to the point of jurisdiction is, whether there is a right to be protected, or a wrong to be prevented, and whether the remedy therefor in other courts, and especially in the courts of common law, is full and adequate to redress it.” P. 60. These he lays down to be the true boundaries of the general jurisdiction of equity; which he then divides into three great heads, the concurrent, the exclusive, and the auxiliary. Of this division the concurrent embraces much the largest class of subjects, and it is under this head that this case falls. This jurisdiction has its true origin ,in one of two sources; “ either the courts of law, though they have general jurisdiction in the matter, cannot give adequate, specific and perfect relief; or, under the actual circumstances of the case, they cannot give relief at all. It extends to all cases of legal rights, where, under the circumstances, there is not a plain, adequate and complete remedy at law.” Under this head of concurrent jurisdiction the large class of constructive frauds are comprehended, and under the head of constructive frauds cases which violate public policy range themselves. 1 Story Eq. 94, 297. They thus fall within the cognizance of *424 equity, under the head of its concurrent jurisdiction, when oí a character which cannot be fully relieved at law. This cause has been properly argued as one, the act in which is against public policy.
The peculiar remedies afforded by courts of equity, often constitute the principal ground for resort to that tribunal, in cases which fall under this head of its jurisdiction. 1 Story, 94; 2 Ib. 154. The point here is, whether that peculiar relief can in this case be administered after the judgment. The general rule on this subject is thus plainly laid down by the same able writer. 2 Story, 173, § 887. “In regard to injunctions after a judgment at law, it may be stated as a general principle, that any fact which proves it to be against conscience to execute such judgment, and of which the injured party could not have availed himself in a court of law; or of which he might have availed himself at law, but was prevented by fraud or accident, unmixed with any fault or negligence in himself or his agents; will authorize a court of equity to interfere by injunction, to restrain the adverse party from availing himself of such judgment.” Marine Insurance Company v. Hodgson, 7 Cranch, 332. The rule is stated in almost exactly the same terms in Gott v. Carr, 6 Gill & Johns. 312. But courts of equity will not relieve against a judgment at law, where the case in equity proceeds upon a ground equally available at law: but the complainant ought to establish some special ground for relief, as that the defence could not at the time, or under the circumstances, be made available at law, without any laches of the party. 2 Story, 179. Harrison v. Nettleship, 2 Mylne & Keen, 425; Farquharson v. Pitcher, 2 Russ. R. 81; Protheroe v. Forman, 2 Swanst. 238.
These are the general rules, extracted by an eminent jurist, from an examination of the cases, and from a view of the whole doctrine, and they seem to us to stand upon the firmest foundations. It is not to be .denied that cases may.be found which hold a different language, but we do not think that they stand upon principle. Take the cases cited from Kentucky) Morrison's Executor v. Hart, 2 Bibb, and Clay v. Fry, 3 Ib. *425 248, as examples. They hold that, in cases of concurrent jurisdiction, if the defendant at law prefer to do so, he may wholly neglect his defence at law, and then, as matter of right, without excuse, he may come into equity for relief against the judgment, because he has the same right to elect in which tribunal to make defence, that the plaintiff has to elect in which court he will bring suit. Now the court overlooked the fact, that when a party is put to his election, it is always before judgment or decree, and not afterwards. It is done upon the sound principle, that it is gross oppression to vex another with a double suit for the same cause. 2 Story, 175. The rule, if it be correct, must likewise apply to both courts. If a complainant file his bill to have an instrument delivered up to be cancelled, and the defendant in equity suffer a decree pro confesso, to be entered and confirmed, he will still have right to elect to proceed at law, to sue upon the instrument, and take his chance there. No court of equity would permit its decrees to be thus trifled with ; and the rule is wholly unsound in its application to a court of law. Another court cannot, in general, entertain jurisdiction, after the cause has been before a court of competent jurisdiction. 6 Term R. 471; 1 East, 537. It was settled at a very early day, that equity has no jurisdiction to examine any judgment of common law, and many bills liave been dismissed upon that ground. Cary, 3; Ib. 76; 2 Cas. in Ch. 98. Yet the doctrine asserted in the Kentucky cases, and contended for in this, involves the right to overrule, or, what is, in effect, the same thing, wholly to disregard the judgments of courts of law, in matters over which they have an unquestioned jurisdiction. So to decide would introduce inextricable confusion in a judicial system like ours, having separate courts, with jurisdiction distinct in general, but sometimes concurrent.
If the general rules above laid down, be applicable to this case, the relief asked for cannot be granted. It is not denied, in argument, that the jurisdiction of the court of law, which tried the cause, was full, complete and adequate to have admitted the defence. But it is insisted that there are exceptions to these rules under which the complainant can be protected. *426 One of these exceptions, as contended for, was, that if there had been no trial at law, the party was entitled to a trial in equity. This position is in terms negatived by the rule, unless the complainant show that he was prevented from making a defence by fraud or accident, without negligence on his own part. See also 2 Story, § 897. The complainant here does not seek to bring himself within that exception, but claims the right to a trial, because he did not choose to submit his defence to a court of law. This has already been sufficiently answered.
It is next insisted that this contract is against public policy, is therefore exempted from the general rule, and that equity will relieve after judgment, on the mere score of policy, without any excuse for at failure to defend at law. We have given to this position the best consideration in our power. We have examined every case referred to in support of it, which we have been able to find. We shall not enter into a detailed examination of each case, but shall state some of the principles on which they are founded, and declare the conclusions we draw from them.
The cases on the subject of usury are pressed into this service. The jurisdiction of equity, in this instance, has been generally exercised in those cases in which a power of attorney to confess judgment was given, as part of the assurance for repayment. As this deprived the party of an opportunity to defend at law, it has been holden to give jurisdiction to equity. Fanning v. Durham, 5 Johns. Ch. R. Courts of law also, themselves, set aside such judgments. Roberts v. Goff, 4 Barn. & Ald. Some courts have gone farther, and have set aside judgments in cases of usury, when regularly obtained, and without any special circumstance to give jurisdiction. Brown v. Toell’s Adm. 5 Rand. 543. But other courts, of the highest standing, have refused to interfere after judgment, unless the party show he had good reason for failing to defend at law. Brown v. Swann, 10 Pet. R. 505. 6 Yerg. 398.
Another class of cases relied on for the purpose, are annuity *427 deeds, not properly enrolled, or void for some other cause. In most instances under this class, the judgments were entered up under powers of attorney to confess judgment. The annuity acts, moreover, declare judgments, as well as contracts and assurances contrary to their provisions, to be void. 1 Bacon, 242, 243. The judgment thus interposes no difficulty, for equity may set aside a void judgment, in the same manner that it may any other void instrument. The same remark is true, in reference to gaming contracts; for the statutes against gaming declare judgments founded upon such agreements to be void. 4 Bacon, 19. Before the statute, money won at gaming might be recovered. Fleetwood v. Jansen, 2 Atk. 467, was the case of a mortgage to secure money won at gaming. The bill was filed to redeem, after a decree of foreclosure. The Lord Chancellor says : “ Consider whether it would not introduce a dangerous precedent in this court, to admit him to redeem now, after he has acquiesced under the foreclosure in the former case. Anything new, which has happened since the hearing, may be taken advantage of, not that which happened before.” This goes to show that equity, now, relieves against judgments in those cases, because they are declared void by statute.
The statutes in Virginia and Kentucky contain a similar provision, in regard to judgments growing out of gaming transactions, and there is hence no obstacle to relief in equity. 2 Hen. & Munf. 80. Skipwith v. Strother, 3 Rand. 214. Clay v. Fry, 3 Bibb, 249. In the case cited from Randolph, it was objected to the jurisdiction of the court, that the judgment might be set aside at law, but the court held that would not deprive equity of its jurisdiction.
In this whole class of constructive frauds, stock-jobbing, illegal insurance, marriage or place brocage bonds, and numerous others, equity is very-unwilling to interfere where the complainant has lain by till after a trial has taken place, and will only do so under special circumstances. Eden on Inj. 15-34. In whatever light we regard the jurisdiction, it flows from the want of adequate relief at law.
It is worthy of remark, that the jurisdiction exercised by *428 chancery, in affording relief against contracts of the character we have just been considering, is not matter of right but of discretion, and it may prescribe the terms of its-interference. When the party comes for relief against his deed, or other instrument, he is required to pay what is justly due, and the assurance is ordered to stand as a security for that purpose. 1 Story, 300. Were this a case for interposition, according to that principle it would only be upon terms. Those terms would be, that the complainant should return the slaves to the vendor, who would also be put under requisitions to carry them from the state. The public and the parties would thus be both vindicated. That the party here is a surety, in our view makes no difference. We put the case, however, upon the broad principle, that after the judgment at law, the party has no right to come into equity, unless for some reason which prevented his defence at law, without n'egligence upon his own part.
It may be proper to noticé a few cases, which were pressed upon us in argument, which may not fall within any of the general observations already made. The case of Snyder v. Dailey, 1 Rand. 76, was a judgment upon two notes under seal, in favor of Dailey. The defendant enjoined the judgment, alleging in his bill that the notes were not given to Dailey, in his individual character, but as president of an unchartered bank; that the institution was illegal, and its acts rendered void by statute. The counsel (Tucker, afterwards president of the court of appeals,) placed the claim for equitable interposition on the ground, that the wrong-doer had obtained the advantage in "a court of law, by hiding the real character of the transaction under a trustee’s name. The injunction was made perpetual; the court cites no authority, and does not allude to the fact, that there had been a judgment at law.
The case of Cock v. Richards, 10 Ves. 437, was a case of a judgment at law, upon a bond, or instrument under seal. Besides various other objections, it was made manifest that there was no consideration for it. That defence could not have been made at law; and the Lord Chancellor says that he did not know “ that the law could make anything of it.” The injunc *429 tion was retained till the hearing. It is clear that the defence at law was not plain, or complete. This remark will apply to many other cases.
Mayhew v. Crickett, 2 Swanst. 185, was a judgment entered up under a power of attorney to confess. In the short note of the case of Evans v. Richardson, cited in 16 Johns. 486, it does not appear whether it was at law or in chancery, or before or after judgment. Whittingham v. Burgoyne, 3 Anst. 900, we have not been able to procure; the note of it, 2 Chit. Eq. Dig. is too imperfect to enable us to see upon what principle it stands.
The passage from 1 Story’s Eq. 297, “ that in such cases the public interest requires that relief should be given, and it is given to the public, through the party,” is, no doubt, the law. But all that the maxim means, as demonstrated by the connection, is, that in such cases relief will not be denied, merely because the complainant is a particeps criminis. He is relieved from that disability for the public good. That it has no reference to the point of equitable jurisdiction, after judgment at law, is shown by the fact, that in every case relied on in support of it, the bill was filed for relief when there had been no judgment, except, perhaps, the last, which we have not been able to find.
It was strenuously urged in argument, that this contract was against a provision of the constitution, and against the declared. policy of the state, and that if we give it effect, we violate an instrument which we are bound to support. We have given this point our most anxious consideration.
We do not doubt that the contract might have been avoided, by plea at law, but by his failure to make such defence, the complainant has placed it beyond the reach of the courts. If this cause had been brought before us by writ of error, from the judgment at law, we could not have reversed it, because the party had not put his defence upon the record. The same result follows now, from the same cause. A contract, contrary to a provision of a statute, is as invalid as when opposed to the constitution. In neither instance will a court give judgment, if *430 defence is made at a proper-time. But if the party suffer a court of competent jurisdiction to render a judgment, with all the forms of law upon it, another constitutional question of equal or of greater weight arises, where is the power to vacate or set aside such judgment ? A court of chancery, under the circumstances which we have endeavored to point out in the previous part of this opinion, has such power. But in the absence of those peculiar circumstances, which are necessary to give lt: jurisdiction, it has not the power. If our views, as to its jurisdiction, are correct, to give it such power by construction would be to violate the constitution, to confound the jurisdiction of the courts, and to break down the barriers between law and equity, which the constitution itself has created. We think, therefore, that we are in the strict pale of our constitutional duty, when we refuse to recognize such a jurisdiction.
This point has been twice heretofore decided by this court; we have again given it the most anxious investigation, and have reached the same conclusion. Nothing remains but to state our conclusion, that the order of the Chancellor, dissolving the injunction, be affirmed.
Chief Justice Sharkey dissented, but delivered no opinion.