In making a further declaration, in the act of 1816, that notes, bills &c. issued contrary to its provisions, should be null and void, it cannot be inferred, that those made contrary to the act of 1805, are valid. The suspension of the former act does not necessarily carry with it, the repeal or suspension of the latter: nor did a particular provision of the act of 1816, § 7, specially prohibiting suits, by the banks therein contemplated, interfere with similar prohibitions, resulting on general principles of law, from the inhibitions contained in the act of 1805. A suspension of the act of 1816, therefore, did not suspend, repeal, or interfere with, the provisions of the act of 1805 : nor does a recognition contained in the suspending act, of a right in the banks, therein-mentioned, to close their transactions, in conformity with the pro *100 v*s*ons the act of 1816, annul or apply to the prohibitions contained in the act of 1805. That suspension left the banks aforesaid, on the ground they occupied, before the passage of the act suspended; but did not place them in a better situation; and, far less, as was argued, did it legalize and charter those associations. It left those banks free to arrange their matters, if they could, without suit: and unaffected by the severe and additional restraints and penalties, of the act of 1816. It did not mean to interfere with the original act, when it only purported to suspend in part another act, more effectually to suppress the circulation of notes, emitted by unchartered banks. The suspension only operated up to the point, embraced by the last act, and did not go beyond it.
Under the admission, that the prohibition in the act of 1805 is not repealed, the counsel for the appellee concedes, that in regal’d to individual cases, the Iawr would be decided against him: but he claims an exemption for his clients, on the ground of the extent of this confederacy to infringe the laws, and of what he is pleased to call, a disease of the body-politic. There may be cases, in which the still voice of the law may not be heard, nor the power of the civil officer be competent to execute its judgments. That, however, is an extreme case, partakes of the nature of a revolution, and, in point of magnitude, is not shewn to exist in the case before us. But where would gentlemen draw the line in such cases ? We know of no such boundary in the case before us. All that we know’, is, that certain associations of individuals have set themselves up, in open violation of the laws, to exercise a high function of sovereignty, at most only confided to the power of the legislature.
We are, therefore, unanimously of opinion, that the judgment, in this case, is erroneous, and that it should be reversed, and entered for the appellants.