Judge Green:
The contract, in this case, is distinctly proved, and has been so far executed as to entitle the appellants to a decree for its specific performance, unless the Banks are unable to give to the appellee a perfect and indefeasible legal title; or, unless a Court of Equity ought to refuse its aid to the appellants, upon the ground, that the purchase and sale of the property in question, was contrary to the policy of the law, as declared in the charters of the Banks.
The creation of a corporation, gives to it, amongst other powers, as incident to its existence and without any express grant of such powers, that of buying and selling. 10 Co. 306. This power may be limited, restrained or prohibited, either by the charter creating the corporation, or by a general law, as in England, by the statutes of mortmain; which provide, that if lands be conveyed to a corporation, without license, the next lord may enter for a forfeiture; and, if he do not enter within a limited time, that then the King may; but, until entry, the estate continued in the corporation. 15 Vin. Abr. 491. The charters of the Bank of Virginia and of the Farmers’ Bank, after authorising them to purchase, hold and enjoy lands and tenements, goods and chattels, to a specified value, and sell and dispose of them, provide, that the lands which it shall be lawful for them to hold, shall be only such as shall be requisite for their immediate accommodation, &c. or acquired in satisfaction of debts, &c.; and, that they shall not, directly or indirectly, deal in, or trade in any other thing, except bills of exchange, gold or silver bullion, &c,
It is insisted, that the lands which the Banks sold to the appellee, were not acquired in satisfaction of debts, &c. and were not requisite for their immediate accommoda tion, &e. according to the charters; and that, therefore, the Banks could not acquire any title to such land, and could not convey any title to the purchaser from them; or, if they could, that as the purchase and sale were con *142 trary to the policy of the law, a Court of Equity ought not £0 assjs(; them, by enforcing the contract.
It seems to me, that the charters are only directory in this respect. They impos.e no penalty in ter'ms. They do not declare the purchase by, or conveyance to, the Banks, to be void, nor vest the title in the Commonwealth, or any other than the Banks, in consequence of such pur» chase and conveyance. The legal title passed to the Banks by the conveyance to them, and their conveyance would effectually transfer that title to any other. If, in making the purchase of the land in question, the Banks violated their charters, the corporation might, for that cause, be dissolved by a proceeding at the suit of the Commonwealth; and even in that case, it seems to be the better opinion, that the property, if not previously conveyed to some other, would revert, upon the dissolution of the corporation, to the grantor, and not to the Commonwealth. Co. Litt. 13, b. But, any conveyance, made by the corporation before its dissolution, would be effectual to pass their title. 1 Fonb. Eq. 298, note (s) and the cases there cited. The Banks have, therefore, a title which they can convey to the appellee, and which would, in his hands, be indefeasible. If, in this case, the Banks violated their chapter, by the purchase of the land in question, the maxim, “factum valet quod fieri non debet,” seems to apply. It would be extremely inconvenient, if every contractor with one of these Banks could, for the purpose of avoiding his contract, institute the enquiry whether the Bank had violated its charter. They have a right to insist, that the question should be tried by a jury, in a proceeding having that single object in view. In England, a tenant of lands conveyed in mortmain, cannot, in a replevin against the corporation or its bailiff, plead the fact of the conveyance in mortmain, to bar the corporation of its right to dis-train. 15 Vin. Abr. “ Mortmain” E.
This case does not fall within the principle of Wilson v. Spencer, 1 Rand. 76. In that ease, an association of *143 individuals dealt in a manner utterly prohibited by law, and a contract, founded on those unlawful dealings, was declared to be void. In this case, the statutes do not prohibit the purchase of real property by the Banks; but, only limits the extent of such purchases; and, the question, whether they have or have not exceeded the limits prescribed to them, is not fit to be tried in this suit, and at the instance of this party. In that case, the judgment of tlio Gourt was calculated to promote, decisively, the policy of the law which was violated. In this case, a refusal to enforce the contract, would seem to counteract the policy of the law, alledged to be violated, by compelling the Banks unwillingly to continue to hold lands, the holding of which constitutes the alledged violation of the law. But, if it were the duty of the Gourt to enquire, in this case, whether the Banks had, in the purchase in question, exceeded the limits prescribed by their charters, I should say that they had not. If they had kept the ground not covered by their banking-houses, for gardens, they could not have been charged with a violation of their charters; and, using it in a way to secure the banking-houses against; fire, was equally innocent, although they combined with that object the other, of getting a re-imbursement, in part, of the cost; of the land.
The objection, that the contract was invalid, because not made under the common seals of the Banks, is also unfounded. This objection was made and overruled in the Bank of Columbia v. Patterson, 7 Cranch; and in Legrand v. Hampden Sydney College, 5 Munf. 324; in the last of which, the contract was for the sale of land.
The decree should be reversed, and the contract specifically executed.
Judge Cap,ex,i,;
The contract stated in the bill, if not admitted by the answer, is clearly established by the proofs in the cause; *144 and, having been partly performed, it is taken out of the g^tute of frauds and perjuries. The appellee, however, se'eks to escape from the payment of the purchase money, on the ground, that the appellants cannot make a good title to the land; and, for the purpose of shewing this inability on the part of the Banks, he relies on that clause in their charters, which declares that the lands, tenements and hereditaments which it shall be lawful for them “ to hold,” shall be only such as shall be requisite for their immediate accommodation, in relation to the convenient transacting of their business. He contends, that the land sold to him by the Banks, was not such as was requisite for their accommodation in the convenient transaction of their business, as is proved by the fact of their selling it: that the Banks, therefore, could not hold the land themselves, and that, not being able to hold, they could not convey.
There is another clause in the law, chartering the Banks, which declares, that they shall be “ able and capable in law, to have, purchase, receive, possess, enjoy and retain, to themselves and their successors, lands, rents, tenements, hereditaments, goods, chattels and effects,” to the amount of the sums on which they are allowed to trade; and, both of these clauses must be taken into consideration, in determining the rights and disabilities of the Banks.
Without deciding the point, let it be conceded to the appellee, that it is competent to him to enquire, in this cause, whether the appellants violated their charters, in the purchase of the land in controversy. For, if their purchase was lawful, it will hardly be contended that they cannot sell it, and make a good title.
The Banks are unquestionably authorised to purchase such lands as may be requisite for their immediate accommodation, in relation to the convenient transacting of their business; and, it must have been intended, that on this subject they should have been allowed to exercise a reasonable discretion. In determining what their convenient accommodation may require, it would surely be very pro *145 per to look to those circumstances which may be neeessai'f to guard against losses or destruction by fire, and to regulate their purchases accordingly. It is impossible to read the evidence in this cause, and not to perceive that 7 1 _ this was the great object of the Banks. The whole joint purchase embraced only one acre; a quantity which, it is believed, no person would contend was too great, provided they had permitted that portion of it to remain vacant and unimproved, which was not covered by the Bank buildings. The Banks, however, thought that their great and lawful object, security from fire, would be sufficiently, if not better promoted, by occupying the whole space with fire-proof buildings; and, having thus accomplished tlieir object, they then sold out such as were no longer necessary to be held by them. The object for which the purchase was made, rendered the purchase legal; and, it would be a most mistaken idea to suppose, that a purchase lawfully made ceases to be legal, or that the Banks cease to have a right to hold or to convey lands lawfully acquired, merely because the object which induced the purchase has been accomplished, or no longer affords an inducement to hold it. If this were the case, the consequence would be, that the Banks could not change the site for carrying on their business, by acquiring new houses or lands for that purpose, however convenient, and even necessary the change might be, without forfeiting their right to the lands and houses, which they now lawfully hold. An argument leading to such consequences, cannot be sound; and, yet this is, in truth, the only argument on which the pretensions of the appellee are founded.
I am of opinion, that the decree be reversed, and the canse remanded to be further proceeded in.
The Phesident:
If the contract in this case had been entered into by naural perspns only, there would be no doubt, on the facts *146 in the record, that a part performance is so proved as to take ^ out ^ie statute °f frauds and perjuries. Posses- and improvements have always been held to take the contract out of the statute. The objection, that the charters of the two Banks do not authorise them to make'a joint contract, seems to mo to be without reason. Though there is nothing in the charters to authorise them to make a joint contract, I cannot perceive that a joint contract in behalf of two or more separate and distinct corporations, to attain an object which, severally, they might attain in virtue of their charters, can be considered an infraction of them, because not expressly provided for therein. The same ends are to be obtained as by several contracts, and there is nothing in a joint contract that is either forbidden bjr the charters, or against their policy.
The question, whether the appellants were authorised to purchase the lot in controversy, under the restrictions in the charter,, which prohibits them to purchase lands to a greater amount than the given sum stated in each charter, including their capital, is not made, I think, by the plead-, ings; and, if made, would not be examinable in this case. It would be difficult to ascertain, whether the excess in the purchase would fall on the lot in question, or on other property held by the appellants; and, if it would, a sentence of forfeiture could not be pronounced in this cause. Such sentence could only be pronounced upon a writ of quo warranto, or some other proceeding in behalf of the Commonwealth; and, in that case, the lot having been sold before’the emanation of the process, the title would pass to the vendee. 1 Fonb. 298, and the cases cited in note (s.) But, if the excess in the purchase would be fixed on the lot in question in this suit, the eighth sections in the two charters seem to imply that it might be sold by the appellants. The words are, “the lands, tenements and hereditaments, which it shall be lawful for the corporation to hold, shall be only such as shall be requisite for its immediate accommodation, in relation to the convenient *147 'transacting of its business.” The denial of the right to hold more lands, &c. than for the purposes recited in the act, does not limit the right to purchase more, if within the amount prescribed by the previous section, and seems to admit the right to sell, whenever any of the purposes for which they are authorised to hold, no longer exists.
As to the manner in which the contract was made, it not being under the seals of the corporations, that objection was over-ruled in the cases of Hampden Sydney College v. Legrand, 5 Munf. 324, and the Bank of Columbia v. Patterson’s adm’r., 7 Cranch.
I think, therefore, that the decree must be reversed, and such decree entered, as has been agreed upon by the Court. That decree is, that, the said decree is erroneous; therefore, it is decreed and ordered, that the same be reversed and annulled, and that the appellees pay to the appellants, their costs, &c., and that the cause be remanded to the Superior Court of Chancery for further proceedings, in which an account is to be taken, for the purpose of ascertaining what sums of principal and interest are due from the appellee to the appellants, upon the contract and loan in the proceedings mentioned, and that the said contract may be specifically executed, under the direction of the said Court of Chancery.*

 Judges Carr and Coalter, absent.