CHRISTIAN, J.,
delivered the opinion of the court.
The act of the general assembly passed February 12th, 1866, requiring the banks of the commonwealth to go into liquidation, was the subject of judicial construction *and interpretation by this court in the case of “Exchange Bank v. Knox,” and “Farmers’ Bank v. Anderson,” 19th Gratt. 739; which cases were afterwards reaffirmed in "Saunders v. White," 20 Gratt. 327. By these decisions it was held—
1. That the act forbids and prevents all preferences among the creditors of the bank.
2. That a debtor of the bank cannot set off notes of the bank bought up by the debtor after the execution and recording of the deed and notice thereof to the debtor.
3. The banks being utterly insolvent, the trustees are the trustees of the creditors, not of the banks, and are purchasers and assignees for value of all the property and effects of the banks for the benefit of the creditors.
4. Though the charters of the banks require them to take these notes in payment of debts due to them, this does not authorize debtors of the bank to pay their debts in the notes of the bank, bought up after the execution and recording of the deeds conveying their assets to trustees for the benefit of their creditors, because the debts are no longer due to the bank but to the creditors of the bank.
These principles must govern the case now before us. If there was no other plea but payment and set off, this case would be precisely the same as those reported in 19 and 20 Grattan. There was, however, in this case a $lea of tender, or what the learned counsel for the appellee calls a special plea in the nature of a plea of tender; and it is insisted that this plea, and the evidence to sustain it, distinguishes this from the decided cases, and withdraws it from the operation of the principles above stated.
Respect for the opinion of the able and learned *judge who decided the case in the Circuit court, and for the learned counsel who maintain that view in argument here, requires a brief consideration of the points raised. The suit is brought upon notes due the Valley Bank, of which the defendant, James Marshall, is endorser.
At the June term of the Circuit court the defendant pleaded payment and set off, and filed with his plea of set-off notes of the Bank of the Valley to the full amount upon their face value of the plaintiff’s claims. These bank notes were not held or owned by the defendant when the notes sued upon came into the hands of the, trustee, but were acquired by the defendant after the defendant’s notes came into the hands of Fant, as receiver, and after the institution of this suit, and after knowledge of the assignment to Brent, trustee. Upon the filing of this plea of set-off the cause was continued from term to term until July term 1872. At that term the defendant tendered'a plea in the following words: “The defendant for further plea states, that pursuant to a decree and order of the Circuit court of the United States, made in the cause of the Merchants Bank of Baltimore v. The Bank of the Valley of Va. et al., in which case the said Fant was appointed receiver, dated day of September 1869, herewith exhibited, he, the said defendant Marshall, did heretofore, to wit, on the day of 1870, offer to pay the whole sum with interest and costs claimed in the plaintiff’s declaration in circulating notes (commonly called bank notes) issued theretofore, and put in circulation by the said nominal plaintiff to the said Fant as receiver ; which offer was by said Fant refused, saying that he would not receive said circulation; and said defendant brings said money in court with this plea, and has already filed the same *with his plea of set-off. Wherefore he says, that he has fully tendered the whole sum claimed by the plaintiff in a currency which he was bound by said decree to take in payment; and this he is ready to verify,” &c., &c.
To this plea the plaintiff demurred; but the court overruled the demurrer: and thereupon the plaintiff replied generally. A jury was waived, and all the matters of law and fact submitted to the court. And the following judgment was entered: “And the parties waiving a trial of the issue by a jury, agreed to put themselves upon the judgment of the court; and being fully heard, it is the opinion of the court, that *417 the defendant hath paid the debt and interest in the writ mentioned, by the payment of money into court since the institution of this suit. Therefore it is considered by the court that the plaintiff may have execution for its costs about its suit in this behalf expended; and as to said debts and interest the defendant go thereof without day,” &c. To this judgment a writ of error and super-sedeas was awarded by this court.
The pretension of the appellee (the defendant in the court below) is, that he is discharged by his tender of the circulating notes of the Bank of the Valley, because of the following order entered in the Circuit court of the United States, by Judge Underwood, on the 21st September 1869, before the decision of the court in Exchange Bank &c. v. Knox, 19 Gratt. 739, to wit: “It is ordered and decreed by this court, that the receiver in this cause be and he is hereby authorized to receive the bank bills or circulating notes of the Bank of the Valley in payment of all notes, bills discounted or receivable, or other debts of any '^kind whatsoever, due to said Bank of the Valley and now in his hands as receiver. ’ ’
I do not deem it necessary to enter upon the discussion of the question argued by the counsel here, whether this order was merely permissive, or mandatory and imperative.
Conceding that the order of Judge Underwood was imperative on his receiver, yet when the judgment of the Circuit court of Frederick was entered (July term 1872) this order of Judge Underwood had been rescinded by Judge Bond, who followed the decision of the Supreme court of this state, which had declared that a debt due to the bank could not be paid in the depreciated notes of the bank, acquired after notice of the assignment of the assets of the bank.
This suit having been brought in a state court, must be governed by the laws of this state as expounded by this court.
It is urged, however, that the defendant ought to be protected because he acquired these depreciated notes, and was induced to purchase them in consequence of the order of Judge Underwood authorizing the receiver to take them in payment of debts held by the bank.
But the proof shows that Mr. Marshall in acquiring these notes, had no reference to the order of the said Circuit court of the United States; but that they were acquired by him because he was firmly of opinion that these notes of the bank could be pleaded as a set-off to the notes the bank held of which he was endorser; and the notes filed with his plea of tender are the same notes which he had before filed in his plea of set-off off.
Mr. Barton’s deposition proves conclusively that Mr. Marshall did not acquire the notes filed with his plea of set-off and afterwards filed (the same notes) *with his plea of tender, because of the order of Judge Underwood; but because, as Mr. Barton states, that he (Marshall) was confident that this court would hold that the debtors to the bank could pay their indebtedness with the depreciated notes of the bank. There is nothing in the record to show that Mr. Marshall ever saw or heard of the order of Judge Underwood authorizing his receiver to take the notes of the bank. But if he had, this was an erroneous order, so declared by Judge Bond of the Circuit court and revoked by him. He certainly could acquire no rights under an order confessedly erroneous, and revoked by the court which made it.
When the plea of tender was filed (July 2d, 1872,) this court had decided that a debtor of the bank could not pay his debt by notes of circulation acquired after notice of the assignment by the bank of its assets ; and the Circuit court of the United States had, on the 23d November, 1871, revoked the order of Judge Underwood, and after referring in its order to the decision of this court in Exchange Bank v. Knox, and Farmers’ Bank v. Anderson, 19 Gratt. 739, and adopting these decisions as the law of the land, had prohibited the receiver “from receiving any circulating notes of the Bank of the Valley, except in cases where such circulating notes were acquired by the debtors before any assignment was made by the Bank of the Valley to a trustee for the benefit of its creditors.”
The Circuit court of Frederick, however, notwithstanding the decision of the court above referred to, and the order of Judge Bond in accordance therewith, appears to have felt itself constrained, by the original order of Judge Underwood, authorizing its receiver to take the depreciated notes of the bank in payment of debts due the bank.
*No doubt this conclusion was adopted by the learned judge upon the theory that the Circuit court of the United States having jurisdiction of the subject, and having settled the mode of payment of debts due to the bank, the parties who acted under this order were fully discharged when they complied with it. But it must be remembered, that when the plea of tender was filed, the order referred to had been declared erroneous, and had been revoked by the same court which had entered it. The notes tendered by the defendant were not a legal tender in any sense; but, on the contrary, were such notes as both the court and the Circuit court of the United States had declared should not be received in payment of debts due the bank, because they (it is conceded) were acquired after notice of the assignment by the bank of its assets for the benefit of its creditors.
The court is therefore of opinion that the judgment of the said Circuit court of Frederick, declaring that “the defendant has paid the debt and interest in the writ mentioned, by his payment of money into court since the institution of this suit,” is srro-neous, and that the same be reversed and annulled; and that a judgment be entered *418 for the plaintiff in conformity with the principles herein declared.
STAPTFS, J., dissented.
The judgment is as follows:
This day came again the parties by their attorneys, and the court, having maturely considered the transcript of the record of the judgment aforesaid and the arguments of counsel, is of opinion, for reasons stated in writing and filed with the record, that the said judgment is erroneous. Therefore it is considered *that the same be reversed and annulled, and that the plaintiff in error recover against the defendant in error its costs by it expended in the prosecution of its writ of error and supersedeas aforesaid here. And this court now proceeding to render such judgment as the said Circuit court ought to have rendered, it is further considered that the plaintiff recover against the defendant the sum of eleven hundreddollars ($1,100), the debt, and $5.56, the costs of protest in the declaration mentioned, with legal interest on $900, part thereof, and $2.76 costs of protest, from the 26th day of June 1861, and on $200, the residue, and $2.80 costs of protest, from the 26th day of April 1861, till payment, and the costs expended by the said plaintiff in the prosecution of the suit in the said Circuit court. Which is ordered 'to be certified to the said Circuit court of Frederick county.
Judgment reversed.
BANKS AND BANKING.
I. Definition and Organization.
A. Definition.
B. Organization.
II. Stock and Stockholders.
III. Officers and Agents.
A. In General.
B. President.
C. Directors.
D. Cashier.
IV. Powers and Functions.
A. In General.
’ B. Deposits.
C. Loans and Circulation of Notes.
D. Collections.
V. Insolvency and Liquidation.
VI. Actions by and against Banks.
VII. National Banks.
VIII. Savings Banks.
IX. Special References.
Banking Cases, Annotated.
Virginia Law Register.
I.DEFINITION AND ORGANIZATION.
A. Definition. — A bank is an institution for the custody and loan of money, the exchange and transmission of the same by means of bills, drafts, and the issuance of its own promissory notes, payable to bearer, as currency; or for the exercise of one or more of these functions. 3 Am. & Eng. Enc. Law (2d Ed.) 789.
B. Organization. — In Virginia and West Virginia, banks are usually incorporated institutions, but unlike many other corporations, banks are organized under general, as distinguished from special, statutes; being thus general or public, such statutes are not required to be proved, but are noticed by the courts ex oMcio. Stribbling v. The Bank of the Valley, 5 Rand. 132; Hays v. Northwestern Bank of Virginia, 9 Gratt. 127.
So also, in an action by a bank, it is not required! to prove its incorporation. Hays v. Northwestern Bank of Virginia, 9 Gratt. 127; Farmers' Bank v. Willis, 7 W. Va. 31.
II.STOCK AND STOCKHOLDERS.
Lien of Bank on Stock. — In Bohmer v. City Bank, 77 Va. 445, the charter of a bank provided, that “the bank shall have a lien prior to all others upon any stock held by a stockholder for any debt of said stockholder to said bank. ” A stockholder, indebted to the bank, borrowed money from a third person and gave, him the certificate as collateral with power of attorney to transfer the stock; after becoming bankrupt the original stockholder applied to the bank to transfer the stock, but the bank refused to do so until paid its debt due from the said stockholder. Held, the act incorporating the bank, superseded the general law providing for the transfer of stock, and gave the bank the prior lien for any debt due it from a stockholder, on his stock; hence the bank had the right to be first satisfied before transferring the stock to the lender of the stockholder; nor is this lien waived by the company’s leaving the certificates outstanding. See also, Petersburg, etc., Co. v. Lumsden, 75 Va. 327; monographic note on “Stock and Stockholders” appended to Osborne v. Osborne, 24 Gratt. 392.
Bank Stock — Taxation—Residence of Stockholders.— Under Acts 1883-’84, p. 568, § 17, the state, without regard to the residence of stockholders, levies for state purposes a tax on the assessed value of their shares of stock as it does upon other moneyed capital. And Code 1887, § 838, requires the supervisors of each county to levy for county purposes annually, and to order the levy on all property assessed with state taxes. Bank of Abingdon v. Washington County, 88 Va. 293, 13 S. E. Rep. 407.
Subscriptions for Stock in Other Corporations— Construction of Statute. — In Goddin v. Crump, 8 Leigh 120, it was held that the statute authorizing the Bank of Virginia to subscribe for stock in a company incorporated to effect a line of transportation from Ohio to the city of Richmond is valid, since the purchase of such stock is germane to the banking .business.
Transfer of Stock — Control of Bank. — When application is made for the transfer of stock in a bank in conformity with its by-laws by one prima facie entitled to have the same transferred, the bank has no control or discretion as to the transfer, or right to prevent it on their transfer book; hence where stock, standing in the name of the guardian of an infant, but belonging to the latter, was sold by the guardian, and transferred to the purchaser by the bank, in accordance with its by-laws, it is not liable therefor, though the sale was in fraud of the ward’s rights, and with the intent by the guardian to appropriate the proceeds to his own use. Bank of Virginia v. Craig, 6 Leigh 399; monographic note on “Stock and Stockholders" appended to Osborne v. Osborne, 24 Gratt. 392.
III.OFFICERS AND AGENTS.
A. In General.
Duties and Powers of Officers Generally — Official *419 Bonds. — Tie words, “which may be prescribed,” in the official bond of a cashier of a bant, conditioned for the faithful performance of “the duties of the said office of cashier, which may be prescribed by the Board of Directors,” were held, under the circumstances, to mean the same as if the words had been “the duties which haye been, are now, or may hereafter be prescribed by the Board of Directors.” The words “which may be prescribed," were intended to enlarge and not to limit the responsibility of the obligors. Durkin v. The Exchange Bank of Virginia, 2 Pat. & Heath 277. See especially, monographic note on “Officers and Agents of Private Corporations” appended to Richmond Enquirer Co. v. Robinson et als., 24 Gratt. 548.
Duties of Officers — Construction of Charter and ByLaws. — The charter and the by-laws of the bank required that the Board of Directors should prescribe the duties of its officers, and the charter also required the directors to keep a book, “in which shall be entered and faithfully recorded a journal of all their proceedings. ” Reid: (1) These provisions were merely directory, and the prescriptions of certain duties of the cashier by the Board might be inferred and presumed from evidence of acts of the board and of the cashier, and a written entry on the journal of a vote, order, or resolution on the Board, was not necessary to establish such prescription. (2) That the cashier, by the performance of certain duties in his office of cashier, was estopped to deny that they had been prescribed by the Board. Durkin v. The Exchange of Virginia. 2 Pat. & Heath 277.
B. President.
Election. — A majority of the directors of a bank constitute a board to do business; and if in the election of a president a majority vote, the person receiving a majority of the votes cast is duly elected. Booker v. Young, 12 Gratt. 303.
Authority. — The inherent powers of a president of a bank by virtue of his office are very limited, and it is difficult to say what powers he inherently possesses, if any other than the power to take charge of litigations of the bank by employing counsel and otherwise. But a president of a bank may be authorized by its directors to do any act, which they are authorized by their charter to do, unless the act to be done can by the charter be done only by the directors themselves. Such authority need not be proven by showing that it was expressly conferred by the board of directors, but may be proven by showing the existence of such facts, as constitute clearly a public holding out that the particular act done or contract entered into was within the scope of his legitimate delegated authority. The inference, that such authority has been impliedly conferred, may be legitimately drawn by proving that he was in the habit of doing acts or making contracts of the same general character as the particular act or contracts which he has done or made, and that these acts or contracts, which he was in the habit of doing, though applied to different subj ects, involved the same general power, except when the acts and contracts, which he was in the habit of doing or making, were so very numerous and so variant in their character as clearly to justify the inference, that he was authorized impliedly to do all acts and make all contracts, which the directors had the power to do or to make, and to confer on the president the right to do or to make. First National Bank of Wellsburg v. Kimberlands, 16 W. Va. 555.
Powers — Indorsement and Transfer of Note Belonging to Bank. — The cashier of a bank has prima facie the authority to endorse or transfer by delivery negotiable notes belonging to the bank, but the president of a bank has no inherent authority to endorse or transfer negotiable notes belonging to the bank, nor has any other officer this inherent power except the cashier. But the president may be authorized by the board of directors to transfer or assign negotiable notes belonging to the bank; and such authority need not be proven by showing that it was expressly conferred by the board of directors, but may be proven by showing the existence of such facts as constitute clearly a public holding out, that he was authorized to transfer or assign the notes belonging to the bank. The inference, that such authority had been conferred, may be legitimately drawn from proof, that he was in the habit of doing acts of the same general character though applied to a different subject, and especially where such acts were the exercise of still greater power, as the assignment of other choses in action such as bonds or judgments; but such power could not be legitimately inferred from proofs, that he was in the habit of receiving deposits or payments of notes, or proofs, that he was authorized to receive generally deposits and payments made to the bank. The board of directors of a bank may ratify or approve a transfer of a negotiable note of a bank, which has been made by the president without authority. The acceptance and appropriation of the consideration, which was received, when the president without authority transferred a negotiable note belonging to the bank, is an implied ratification of his act, when such acceptance and appropriation is made by the directors of the bank, after they have been informed of the unauthorized act of the president, and if the acceptance of such consideration and its appropriation have been made by the officers of the bank without the knowledge of the directors, unless the directors return the consideration, when the receipt becomes known to them, the failure and the retention of the consideration by them will be a confirmation of the act of the president. Smith v. Lawson, 18 W. Va. 212.
Release of .'taker of Note Payable to Bank. — in Hodge v. First Nat. Bank, 22 Gratt. 51, it was held that the president of a bank has no authority to release the maker of a note payable to the bank.
Power to Receive Payment of Debt Due Bank — Ratification. — In Parker v. Donnally, 4 W. Va. 648, it was held that though the president of a bank has no authority to receive payment of a debt due the bank-yet such payment will not be set aside after it has been acquiesced in by the bank for many years.
Liability to Bank.-M was president of the O. D. bank located in the city of Alexandria, and he was a member of the firm of B & Co. of that city. In May 1861 M went to Richmond, where he remained during the war; and B & Co. removed to the same city. In January 1863, M collected of the treasurer of the state the interest on state bonds held by the bank in Confederate money. After the war the O. D. bank may maintain an action of assumpsit against M for the money so collected by him. McVeigh v. The Bank of the Old Dominion, 26 Gratt. 188.
C. Directors.
Appointment. — If a person appointed a director of a bank by the executive under the act of March the 22nd, 1837, Sessions Acts, p. 57, declines to accept the office or resigns, the executive is not authorized to make another appointment; but his place is to *420 tie supplied by the appointment of the directors of the bant. Prest. & Dir. of the Bank of Va. v. Robinson, 5 Gratt. 174.
Duties and Powers Generally — Preferences.—Directors of a bant áre bound to discharge their duties prudently, diligently, and faithfully, and apply the assets, in case of insolvency, for the benefit of creditors in preference to stoctholders and other persons. But they are not technically trustees nor bound to apply the assets ratably among the general creditors. They may not only mate preferences between creditors, but such preferences may be made in their own favor if they be creditors. But in such cases they mijst act with the utmost good faith. Planters’ Bank of Farmville v. Whittle, 78 Va. 737.
Objection that assignments of assets made by the directors of a bank to pay debts for which they are individually bound, are void, under Code 1873, ch. 57, § 18, which provides that “No member of the board shall vote on a Question in which he is interested, otherwise than- as a stockholder,” must be made in the court below, and cannot be raised for the first time in an appellate court. Planters’ Bank of Farmville v. Whittle, 78 Va. 737.
Ratification of Unauthorized Acts of President. — The directors of a bank may ratify any act done or contract made by the president without authority, which they could have authorized him to do or to make. The acceptance of the benefits of a contract made by the president for the bank is an implied ratification of such contract, and if money is received by its cashier for the bank under such contract, even when such receipt was unknown to the directors, it will be a confirmation of the contract, unless the money so received is returned, when its receipt becomes known to the directors. First National Bank of Wellsburg v. Kimberlands, 16 W. Va. 555.
Liability for Non-Feasance. — A creditor of an incorporated monied institution, cannot generally maintain an action at law against the directors thereof for simple non-feasance of duty to the corporation, or fraud in the management or disposition of the money or property of the corporation. But directors of such institutions, may make themselves liable in an action at law for loss and damages, for false representations made or caused to be made by them, and perhaps acts done or caused to be done by them, with intent thereby to deceive and defraud the plaintiff, and which had the designed effect, and caused loss and damage to the plaintiff, but the false representations made or caused to be made, or acts done or caused to be done by the defendants, and relied on by the plaintiff, and the intent thereby to deceive and defraud the plaintiff, must be averred or alleged in positive terms. Zinn v. Mendel, 9 W. Va. 580.
Directors — Fraud—Liability.—A director of an insolvent bank, who is also a depositor and the surety on notice held by the bank and not yet due, cannot by an arrangement with the cashier, at a time when both he and the cashier know the bank is about to fail, if he can do so at any time, obtain from the cashier such notes in payment of the deposits due him from the bank. In a suit by the .assignee offthe bank for the proceeds of such notes such director and surety will not be entitled to set off the debt of the bank due him for deposits against the piain,tiff’s demand, except to the extent he may be entitled to dividends from the assignee on account of his debt against the bank. Lamb, Trustee, etc., v. Pannell’s Adm’r, 28 W. Va. 663; Lamb v. Cecil, 28 W. Va. 653.
Fraud of Director — Laches.—When a director of an insolvent banking corporation by fraud and collusion with the cashier of such institution receives from the cashier for his deposits, without the authority of the board of directors, discounted bills and notes, the property of said corporation, and suit is not brought therefor until nearly five years after such transaction, the doctrine of laches does not apply. Lamb v. Cecil, 25 W. Va. 288.
D. Cashier.
Powers — Sale and Transferring Discounted Bills.— The power to sell and transfer the discounted bills and notes of the bank does not belong to the ordinary powers of the cashier, but inasmuch as he may do so under some circumstances, a transfer made by him in the usual course of the business of the bank to a person, who has no cause to question the propriety or good faith, of the transaction, will be prima facie valid. Lamb, Trustee, etc., v. Cecil, 28 W. Va. 653.
Where the management of the affairs of a banking corporation is entrusted by its charter to a board of directors, unless specially authorized by the charter, the cashier of such banking corporation has no power to assign the discounted bills and notes to a depositor in payment of his deposits without authority from the board of directors. Lamb v. Cecil, 25 W. Va. 288; Lamb v. Pannell, 25 W. Va. 298.
Transfer of Notes. — The cashier’s prima facie authority to transfer the negotiable notes of a bank will not make such transfer valid, if it be proven that the transferee knew that the transfer was made by the cashier not in the usual course of business and for an improper purpose. Smith v. Lawson, 18 W. Va. 214.
Release of Maker of Note. — In Hodge v. First Nat. Bank, 22 Gratt. 51, it was held that the cashier of a bank is not empowered, virtute officii merely, and without express authority from the board of directors, to release the maker of a note payable to and held by the bank, from his legal liability on such note.
. Hisappropriatton of Funds — -Liability to Bank — Equity Jurisdiction. — The cashier of a bank, intrusted with the control and custody of its funds, will, in a court of equity be held as a trustee for said bank and may be sued by it in such court, and compelled to account for and pay any loss sustained by it, which was caused by any negligence or wrongful conversion or by any misapplication or use of any of its funds by such cashier in violation of the duties of his said trust. Merchants’ Bank v Jeffries, Adm’x, 21 W. Va. 504.
Accountant — Liability of Sureties. — The sureties of an accountant of a bank, are not liable for monies taken by him from the teller’s drawer, without his knowledge or consent, it appearing that the accountant is not entrusted with, or put in possession of, any monies of the bank, as accountant. Allison v. Bank, 6 Rand. 204.
IV. POWERS AND FUNCTIONS.
A. In General.
Acquisition of Property — Real Estate. — Under an act of Assembly, authorizing a bank to hold as much real property as may be requisite for its immediate accommodation, in relation to the convenient transaction of its business, and no more, the bank may purchase more ground than is nec *421 essary for the erection of a banking-house, build fire-proof houses on the vacant land, for the greater security of the banking-house, and sell them out to third persons. Even if the bank violated its charter in so doing, the only proceeding against it, would be by quo warrantor and the purchasers of the houses, cannot resist a specific performance of their contracts, by alleging that the bank had exceeded its powers, in erecting and selling the houses. The Banks v. Poitiaux, 3 Rand. 136.
Agreement for Sale of Lands — Corporate Seal. — In The Banks v. Poitiaux, 3 Rand. 136, it was held that the seal of a banking corporation is not necessary to give validity to an agreement for the sale of real property.
Rights of flother Bank — In Smith v. Lawson, 18 W. Va. 212. it was held that the mother bank has a right to receive payment of a negotiable note discounted by the branch.
B. Deposits.
Nature of a Deposit. — In Robinson v. Gardiner, 18 Gratt. 509, it was held that a deposit of money in a bank is a loan and not a bailment.
Liability of Bank for Interest on Deposits. — In Parkersburg Nat. Bank v. Als, 5 W. Va. 50, it was held that a bank is not chargeable with interest on sums deposited to the credit of customers to be drawn against by check, until payment be demanded, unless upon special contract. Upon money not so deposited, however, interest may be charged.
Raised Check — Liability of Bank — Duty of Depositor in Drawing Check. — A bank is responsible to a depositor for the payment of a check which has been altered in a material particular after signature, unless the negligence of laches of the drawer has laid the foundation for the error of the bank. The depositor, however, is only chargeable with the duty of ordinary care and diligence. Merely giving a stranger a check in exchange for money is not such negligence on the part of the drawer as will excuse the bank on which it is drawn for paying the check after it has been raised to a larger amount by the drawee without authority. The National Bank of Va. v. Nolting, 94 Va. 263, 26 S. E. Rep. 826.
Depositor’s Right of Set-Off. — In Spilman v. Payne, 84 Va. 435, 4 S. E. Rep. 749, a judgment creditor of a bank had deposited money with its branch subject to check, and the money was lost by the bank’s failure. Held, the deposit did not discharge the judgment, and is no set-off against the assignee thereof.
Insolvent Banks — Rights of Depositor. — When a depositor is entitled to dividends from the assignee of the bank, which have not been declared or paid by reason of the controversy in the suit, he -will be entitled to be paid out of the fund recovered from his dividends on his deposit equal to those paid to the other depositors with interest on the same from the time the same would have been paid if there had been no controversy or suit. Lamb. Trustee, etc., v. Cecil, 28 W. Va. 653.
Bank’s Right of Set-Off. — W. G. having contracted a debt to a bank, by note payable sixty days after date discounted by the bank for his accommodation, dies before the note comes to maturity, having on deposit in the bank, at the time of his death, a sum of money exceeding the amount of the note. Held, that in case W. G.'s estate prove insolvent, the bank has a right, in equity, to retain the amount of his note out of the money it held for him on deposit, whether there be debts of W. G. of superior dignity to the debt he owed the bank, or not; equity, in such case, regarding the bank as the debtor to W. G. only for the excess of his money on deposit above the contents of his note. Ford’s Adm’r v. Thornton, 3 Leigh 695.
Right to Set=Off Deposits Made after Maturity of Debt. — A joint note, signed by several parties, for $6,000 was presented to a bank for discount by the principal in the note; they discounted it for $4,000 only, and the cashier endorsed it “discounted for $4,000 only, and should be so read.’' This was done without the knowledge of the sureties in the note. Held, that they were nevertheless bound, the transaction being equivalent to a discounting of the note for $6,000 and a repayment by the principal of $2,000 thereon; and that it not being paid at maturity, general deposits made by the principal in the note, after its maturity, could not, without his direction so to apply them, be regarded as payments on this note. Merchants & Mechanics' Bank of Wheeling v. Evans & Dorsey, 9 W. Va. 373.
Banker’s Lien. — If a collecting bank has no notice that the bank sending the remittance was merely an agent, but regarded and treated it as the owner of the paper transmitted, yet the collecting bank is not entitled, as against the real owner, to a lien for general balance of account, unless credit was given to the bank sending the paper, or balance suffered to remain in its hands, to be met by the negotiable paper transmitted, or expected to be transmitted, in the usual course of dealings between the two banks. If, in mutual dealings between banks, the collecting bank regarded and treated the bank transmitting negotiable paper as the owner of such paper transmitted for collection, and had no notice to the contrary, and upon the credit of such transmittance. made or anticipated in the usual course of dealing between them, balances were from time to time suffered to remain in the hands of the bank making the remittance, to be met by the proceeds of such negotiable paper, then the collecting bank is entitled to a lien against the real owner of such paper, for the balance of account due from the bank transmitting such paper. Carroll v. Exchange Bank, 30 W. Va. 518, 4 S. E. Rep. 440, 8 Am. St. Rep. 101.
Accounts between Banks — Lien for Balance. — Where there have been for several years mutual and extensive dealings between two banks, and an account-current kept between them, in which they mutually credited each other with the proceeds of all paper remitted for collection when received, and charged all costs, and accounts were regularly transmitted from one to the other, and settled upon these principles, and upon the face of the paper transmitted it always appeared to be the property of the respective banks, and to be remitted by each of them upon its own account, there is a lien for a general balance upon the paper thus transmitted, no matter who may be its real owner. But if the receiving and collecting bank, at the time of mutual dealings with the bank sending paper, has notice that such bank has no interest in the paper transmitted, and that it transmits such paper merely as agent, then the collecting bank is not entitled to retain against the bank transmitting the paper for the general balance of the account with such bank. Carroll v. Exchange Bank, 30 W. Va. 518, 4 S. E. Rep. 440, 8 Am. St. Rep. 101.
Deposits as Collateral — Application.—It is a well-settled rule that collaterals deposited with a bank for one debt, or class of debts, cannot be appropri- *422 atea to another debt, or class of debts. So where a firm having deposited with a bank as collateral for its note to the bank, another note of the firm endorsed by third party, stipulated as follows: “If we should come under any other liability, or enter, into any other engagement, with said bank, while it holds this obligation," etc. Held, construing the word or as and, the stipulation refers to any other liability or engagement of the same kind with the first mentioned note; and not to a draft drawn on, and accepted by, said firm, and discounted for the drawer and placed to his credit. Loyd v. Lynchburg National Bank, 86 Va. 690, 11 S. E. Rep. 104.
Deposits of Public Moneys. — The banks of this commonwealth in which the public moneys were on' deposit, paid the interest falling due in January 1840 upon public loans, in specie or its equivalent. Under the proviso to the second section of the act of March 28, 1838, (Sess. Acts of 1838, p. 27, ch. 13.) they claimed credit in account with the commonwealth for the premium which they had to pay to the public creditors for the then difference between specie and the notes of the banks. Held: 1. That under the acts in 2 R. 0. of 1819, ch. 174, § 6, p. 2, and in Sess. Acts of 1838, p. 27, ch. 14, the claim of any bank for such premium may properly be presented to the first auditor. 2. That, upon the disallowance of such claim, the bank may file a petition for redress to the court of chancery for Henrico and Richmond, created by the act of March 13,1841, in Sess. Acts of 1840-41, p. 65, ch. 48. 3. That according to the true construction and effect of the act of December 11, 1839, in Sess. Acts of 1839-40, p. 52, ch. 63, (especially of the first proviso thereto) the claim of any bank for the premium so paid must be disallowed. Commonwealth v. Farmers’ Bank, 2 Rob. 737. C. Loans and Circulation of Notes.
Loans — Usury.—In Stribbling v. The Bank of the Valley, 5 Rand. 132, it was held that the law of usury applies to banks, subject to the modifications produced by their charters.
Circulating Notes — Actions to Enforce Payment— Demand. — In November 1864, during the war, H. and S. issued an attachment in a chancery suit against the Bank of Virginia, as a non-resident for a debt of $36,500, being notes of that bank owned by them, some of which were payable at branches of that bank in Virginia and had not been presented at such branch banks for payment. Held: (1) The attachment was properly issued against the Bank of Virginia as a non-resident. (2) The court properly decreed the payment of the whole of this $36,500, out of the attached effects of the bank. Hall v. The Bank of Virginia, 14 W. Va. 584.
Circulating Notes — Payment—Mutilated Notes. — The bona Me owner of a bank note, having transmitted one-half thereof by mail, which has been stolen therefrom, or is lost, cannot demand payment from the bank of any part of its amount, in consequence of holding the retained half, merely; but he is entitled to demand the whole amount of the said note, on satisfying the bank of the verity of the above facts, or establishing them by the judgment of a court of equity, and giving, in either case, a satisfactory indemnity, to secure the bank against future loss from the appearance, and setting up, of the other half of such note. Bank of Virginia v. Ward, 6 Munf. 166.
Payment of Mutilated Notes. — where a bank note is cut in two, and one half sent by mail and lost, the holder of the remaining half has a right to demand payment at the bank, upon presentation of the half in his possession, proving ownership, and giving bond with adequate security for the indemnification of the bank. But if these pre-requisites are not complied with, and the bank is sued in consequence of refusing payment, the holder shall not.recover interest or costs, although he may perform the conditions after the suit is brought. Farmers' Bank of Virginia v. Reynolds, 4 Rand. 186.
D. Collections.
Collections — Authority to Receive Payment. — If a note deposited for collection in a bank where it is made payable, is not paid at maturity, but being protested, is permitted by the owner to remain in the bank, however long or from whatever motive, he may permit it thus to remain there, it may, as a general rule, be safely paid to the bank by the debtor; provided he has no notice that the bank in fact has no authority to receive the money. Alley v. Rogers, 19 Gratt. 366.
Collections — Paper Payable at a Particular Bank.— In debt against the makers of a promissory note (made in Virginia) negotiable and payable at the United States branch bank at Washington City, the first count of the declaration, after describing the note, averred that the same was duly presented at the bank, and payment there required. At the trial, there being no proof of a demand of payment at the bank, the circuit court instructed the jury that the plaintiff could not recover on this count. The second count of the same declaration merely set forth the note, without any averment of presentment at the place; and the defendants having demurred thereto, the circuit court sustained the demurrer. Held, the circuit court erred in sustaining the demurrer, and also in its instruction to the jury. Armistead v. Armisteads, 10 Leigh 512.
Collections — Right to Proceeds. — The plaintiff, a banking corporation, sent a number of checks to its correspondent, a banking "firm at A., for collection; the checks being drawn upon the latter firm. Afterwards, but before the checks were received, the latter firm was dissolved by the death of one of its members. The surviving partner paid the checks by charging them to the accounts of the drawers, and gave credit for the amount thereof to the plaintiff on the books of the firm. Held, that he had no such authority, but that he should have either sent back the checks or remitted the proceeds. And where the moneys represented by the checks were afterwards transferred by the surviving partner to an assignee for the benefit of creditors, but remained easily traceable on the books of the firm, no checks having been drawn against the credit to the plaintiff, the latter could reclaim such moneys from the assignee. First Nat. Bank of Alexandria v. Payne & Co.’s Assignees, 85 Va. 890, 9 S. E. Rep. 153.
V. INSOLVENCY AND LIQUIDATION.
Insolvent Banks — General Assignment — Collection of Claims by Trustee. — An insolvent banking corporation has the right to assign all its property for the benefit of its creditors generally. Whatever claims a bank could collect by suit or action, before an assignment may be so collected afterwards by the trustee in the deed of assignment. Lamb v. Cecil, 25 W. Va. 288.
Assignment for Benefit of Creditors. — In Farmers’ Bank v. Willis, 7 W. Va. 31, it was held that the bank had the right to assign its assets for the benefit of creditors, independently of the act of the general assembly passed in 1866 on that subject.
*423 Suit by Trustee of Insolvent Bank — Bank Notes as Set=Off. — The provision in the Code of Virginia, that, “though a hank had a branch * * * all its notes should be received in payment of debts to the bank, ■whether contracted at the parent bank, or a branch,” applied only while the debts remained due to the bank. When a negotiable promissory note discounted by the Farmers’ Bank of Virginia had been assigned by the bank to trustees, for the payment of antecedent debts, and the maker, having notice of the assignment, afterwards acquired notes of the bank, he could not, with these, pay his debt so assigned, or set them off against it. Farmers’ Bank v. Willis, 7 W. Va. 31.
Suit by Trustee in Insolvency — Estoppel.—If before suit brought by the trustee in the deed of assignment from an insolvent banking corporation to recover the amount of discounted bills and notes fraudulently received from the cashier without authority by a director of such insolvent banking institution the said trustee had paid such director dividends on the indebtedness of such institution to him, this fact does not work an estoppel to maintain such suit. Lamb v. Cecil, 25 W. Va. 288.
Suits by Trustee In Insolvency. — A bank having, in pursuance of the act of February 12th, 1867, conveyed all its property to trustees for the purpose of closing up its affairs, a suit may be brought in the name of the bank for the benefit of the trustees upon a note discounted by the bank prior to the execution of this deed. Code of 1873, ch. 56, § 31, p. 843; Crews v. Farmers' Bank of Va., 31 Gratt. 349.
Dissolution — Creditor’s Bill — Receiver.—The bank of P. was ruined by the late war; and no officers of the bank have been elected nor has there been a meeting of the board since April 1865, and it has done no business since, and in fact it had been abandoned and ceased to exist. In April 1866, H. and M. suing as well for themselves as for all the other stockholders, creditors and depositors, etc., filed their bill against the bank and the president, for a settlement of its affairs and a distribution of its assets. The court appointed a receiver in the case, and in June 1866, there was a decree for an account. Held: (1) It is a proper case for a creditor’s suit. (2) A debtor of the bank purchasing debts due from the bank after the decree for an account, is only entitled to stand in the shoes of his assignor, and receive his proportion of the assets realized. (3) In an action by the receiver against a debtor of the bank, the record in the chancery cause is evidence for the plaintiff. Finney v. Bennett, 27 Gratt. 865.
Receiver — Injunction.—Until the appointment of a receiver and the award of the injunction, the management of the affairs of a bank remains in the hands of the directors, and assignments by them in payment of the company’s debt may be lawfully made. Planters’ Bank of Farmville v. Whittle, 78 Va. 737.
Liquidation — Receiver—Authority—Plea of Tender-Nota Valid Defense. — in a suit in the circuit court of the United States against The Bank of the Valley, the court, on the 21st of September 1869, made an order that the receiver receive the notes of the bank in payment of debts due to the bank. After the decision of the cases of Exchange Bank v. Knox, etc., the court set aside this order. A plea of tender of these notes in payment of debts of the bank, filed in a case pending in a state court, after the rescinding of the order of the United States court, the notes having been obtained after the execution and recording of the deed of the bank and notice thereof to the defendant, is not a valid defence to the action. Bank of the Valley v. Marshall, 25 Gratt. 378.
Liquidation — Construction of Statute. — Under the act of February 12th, 1866, requiring the banks of the commonwealth to go into liquidation, the banks, being insolvent, execute deeds conveying all their property, including debts due to them, to trustees for the payment of their debts. Held: (1) That the act forbids and prevents all preferences among the creditors of the bank. (2) That a debtor of the bank cannot set of£ notes of the bank bought up by the debtor after the execution and recording of the deed and notice thereof to the debtor. (3) The' banks being utterly insolvent, the trustees are the trustees of the creditors, not of the banks, and are purchasers and assignees for value of all the property and effects of the banks, for the benefit of the creditors. (4) Though the charters of the banks require them to take their notes in payment of debts due to them, this does not authorize debtors of the banks to pay their debts with the notes of the banks, bought up after the execution and recording of the deeds. (5) After the judgment in the court below the appellees are declared bankrupts and obtain their discharge. The appellate Gourt will, upon their petition, make it a part of their judgment of reversal, that execution shall not be issued upon the judgment without a previous order to that effect by the court below, made upon notice to them. Exchange Bank of Va. v. Knox, 19 Gratt. 739; Saunders v. White, 20 Gratt. 327.
Liquidation — Construction of Statute. — Upon the true construction of the act of February 12th, 1866, Sess. Acts 1865-66, p. 204, entitled “An act requiring the banks of this commonwealth to go into liquidation,” all the creditors of a bank, not having a specific lien upon property of the bank, are placed upon the same footing, and are entitled to share the assets ratably. The general assembly having reserved the right to alter or’ repeal the charter of the bank, the act is not obnoxious to the charge of interfering with vested rights or impairing the obligation of contracts. Robinson v. Gardiner, 18 Gratt. 509.
VI. ACTIONS BY AND AGAINST BANKS.
Suit against Bank — Corporate Name — Summons.— Where an action is brought under the act passed March 19, 1832, entitled “an act authorizing suits against the branches of banks in this commonwealth in certain cases,” the summons is not tobe issued nor the declaration filed against the branch bank, but both must be against the mother bank by its corporate name. Tompkins v. The Branch Bank, 11 Leigh 372.
Process against Bank, — In The Bank of Va. v. Craig, 6 Leigh 399, where a restraining order was issued against “The President and Directors of the Bank of Virginia,” it was held not binding on the bank whose corporate name by which it sues and is sued under its charter was “The President, Directors, and Company of the Bank of Virginia.”
Actions against Bank for Failure to Collect Note-Declaration. — And in an action against a bank for negligence in failing to protest a note placed with it for collection, it is sufficient if the declaration avers it was so placed before its maturity, though the date of the placing is not specified. The fact that cashier handed plaintiff, in lieu of an old note which should have been protested, a renewed note, saying former was lost, and plaintiff retained latter some time, is not conclusive of plaintiff’s ratification of the bank’s *424 action, tint evidence from which the jury might or might not infer such ratification. Roanoke National Bank v. Hambrick, 82 Va. 135.
Actions by Depositors — Right of Bank to Interplead.— “O. D.’' deposited in hank fourteen hags of silver coin of the valne of $7,496.75, which was claimed by “H. R.” administrator, etc., as the property of his decedent. Upon the refusal of the hank to deliver the coin to “O. D.” she brought an action of detinue, to recover the same. The bank appeared to the action, filed the affidavit prescribed by sec. 1 of ch. 107 of the Code of J868, and on its motion said administrator was required to interplead with the plaintiff. Held, that under said sec. 1 of ch. 107, the interpleader was properly directed. Dickeschied v. Exchange Bank, 28 W. Va. 340.
Bill against Cashier for Settlement of Accounts— Sufficiency of Allegations. — Where a bill filed, by a bank against its cashier for a settlement of his accounts as such only alleges that the defendant was such cashier; “that during his term as cashier he lent sundry sums of money to sundry irresponsible persons without the consent of the board of directors of said bank, for which he is liable personally ; and that the books and papers and cash-items show a large deficiency in the assets of said bank during the said cashier’s term” of office; and said bill contains no averments that said bank sustained any loss by such unauthorized-loans; or that the moneys so lent have not been repaid; or that said deficiency in its assets was caused by any act or negligence of such cashier, it is clearly insufficient; and a demurrer thereto ought to be sustained, because it presents no cause of action against said defendant. Merchants’ Bank v. Jeffries, Adm’x, 21 W. Va. 504.
Branch Banks — Actions against — Corporate Name.— Upon the construction of the statute of March 19, 1832, “authorizing suits against branches of banks in this commonwealth," held, a suit cannot be maintained against the president and directors of the branch; the suit must still be brought against the principal bank by its corporate name. And where a suit is brought against the president and directors of a branch bank, this is not a mere misnomer, which must be pleaded in abatement, but is a bar to any recovery; and though a verdict be founded upon the general issue pleaded, the error is not cured by the statute of jeofails. In such case, however, the defendants'cannot have judgment for costs; for they can no more have judgment against the plaintiff, than he can have judgment against them. Mason v. Farmers’ Bank of Petersburg, 12 Leigh 84.
Unchartered Banks — Actions by. — In Wilson v. Spencer, 1 Rand. 76, it was held that no action brought by an unchartered bank, on a bond given for bank notes emitted by such bank, can be sustained.
Unauthorized Banking — Proceedings against. — In Commonwealth v. Scott & Thompson, 4 Rand. 143, it was held that the Act of 1816, 2 Rev. Code III, providing that it shall not be lawful for an unorganized company to engage in banking, and that members of such company shall be guilty of a misdemeanor, is penal, and that therefore the court of appeals has no jurisdiction in the case of an information against the members. See also, construing this Act, Commonwealth v. Horner, 10 Leigh 700; Wilson v. Spencer, 1 Rand. 76.
Unincorporated Banks — Liabilities—Equity Jurisdiction. — A private unchartered company, associated for the purpose of carrying on business as a bank, though such associations are contrary to law, will be entertained in a court of chancery, in a suit against its cashier, for an account of his agency. Berkshire v. Evans, 4 Leigh 223.
Unchartered and Illegal Banks — Defense.—To an action of debt on a note alleged to have been made and discounted by the plaintiffs in Virginia, but made payable at a bank out of the state, a plea that the plaintiffs are an unchartered banking company, issuing and circulating their own paper notes or bills as currency, contrary to law and public policy; and that they as a banking company discounted the said note, contrary to law and public policy, sets up a good defense to the action. So in such a case, a plea that the consideration of the note declared on was the bank paper of the plaintiffs unlawfully issued by them as currency, they being an unchar-tered banking company, presents a good defense to the action. Hamtramck v. Selden, Withers & Co., 12 Gratt. 28.
Foreign Banks — Jurisdiction.—In Bank of Marietta v. Pindall etals., 2 Rand. 465, it washeld, that'though a foreign corporation may maintain an action against its debtor in the courts of Virginia, yet, that a bank of another state cannot make a primary contract in Virginia by discounting notes there.
Foreign Banks — Construction of Statute. — In Bank of Old Dominion v. McVeigh, 20 Gratt. 457, it was held that, the Act of March 3, 1861, authorizing payment of debts due to mother banks within the Federal lines to be made to branch banks within the Confederate lines, is not obligatory upon the mother banks, but is'unconstitutional as to- debts contracted before its passage, although payment has been made in Confederate money to a branch bank.
VII. NATIONAL BANKS.
National Banks — Loans on Stock Security. — Section 5201, U. S. Revised Statutes, prohibits national banking associations from making loans upon security of shares of their own stock. Hence a by-law, though notice thereof be endorsed on the certificate of stock, is void, which prohibits a stockholder who is indebted to bank from transferring his stock without the consent of the board of directors. Feckheimer v. The National Exchange Bank of Norfolk, 79 Va. 80.
National Banks — Stock—Transfer—Enforcement.—L. & S. own shares of stock in N. E. bank of N., and failing, indebted to the bank, assign the shares to F., trustee. The certificates contain notice of such a by-law. Transfer could only be made upon the books of the bank, which refuses to allow said shares to be transferred to trustee. Latter files bill, asking that the bank be required to allow such transfer to be made on its books, and to issue new certificates therefor. Meld, the remedy at law is not adequate, and it is not a case for compensation in damages, but for specific performance, which can only be enforced in a court of chancery. Feckheimer v. The National Exchange Bank of Norfolk, 79 Va. 80.
National Bank Stock. — A deed which conveys all the grantors’ “property, real and personal,” embraces and conveys all their shares of stock in a national bank. Feckheimer v. The National Exchange Bank of Norfolk, 79 Va. 80.
National Banks — Powers—Acceptance of Check without Funds. — The act of congress passed the 3d day of March, 1869, making it unlawful for a national bank to certify checks, unless the drawer has, at the time, an amount of funds on deposit in said bank equal to the amount specified in the check, does-not invalidate an oral acceptance of a check, or an oral promise *425 to pay a check, there 'being' at the time sufficient funds of the drawer in possession to meet it. But the said act of congress does not invalidate a conditional acceptance of a check by a national bank having no funds of the drawer in its hands at the tim e, but that it will pay the same whenever a draft, left with it for collection by the drawer, and sufficient in amount for the purpose, shall have been paid. National Bank v. National Bank, 7 W. Va. 544.
National Banks — Organization — Construction of Statutes. — The act of congress of the 3d of June, 1864, Revised Statutes of the United States, §§ 5136-5137, under which the National Bank of Fredericks-burg was organized, does not imply a negation of the corporate power on the part of the national banks which might be organized under it to make a loan of money on real estate; does not annul any loan made by any such bank; or release or discharge any deed of trust or mortgage on real estate taken by the bank to secure the payment of such loan. If the act of congress plainly prohibited a bank organized under it to take a deed of trust or mortgage to secure a loan in any case, or make it penal to do so, such a provision could only have been intended for the benefit of the government, which might or might not, at its pleasure, enforce the forfeiture ; and it could not be avoided by the borrower or his creditors. Wroten’s Ass’nee v. Armat, 31 Gratt. 228.
VIH. SAVINGS BANKS.
Savings Banks — Deposits — Repayment. — When money has been deposited with such institution, and there has been no contract that a different rule shall prevail, such institution, when the deposit is made, ordinarily, becomes the owner of the money deposited, and consequently a debtor for the amount, and under obligation to pay, on demand, not the identical money received, but a sum equal in legal value. But it seems this rule does not apply where the thing deposited is not money but a commodity. Zinn v. Mendel, 9 W. Va. 580.
Savings Banks — Directors—Liability.—The president of a savings bank misappropriated its funds and overdrew his accounts, and a brother of the president, and corporations of which the officers and directors were also officers, largely overdrew their accounts, and were loaned large sums by the bank with little or no security, though such borrowers were Irresponsible, and another borrower was permitted to withdraw his security. The directors, though required to meet weekly, met but once, twice, or three times a year, and never caused the books to be examined, nor called for statements of accounts with other banks. The capital of the hank was small, and much of it was not paid up, and the paid-up portion was treated as a loan. The bank, on suspension, was able to pay but 10 per cent, on the deposits. Held, that though the directors were ignorant of the affairs of the hank, and were not guilty of bad faith, they were guilty of such negligence as rendered them liable to the depositors. Marshall v. Farmers & Mechanics' Sav. Bank, 85 Va. 676, 8 S. E. Rep. 586.